IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILE DIVISION


RICKEY MCKINNEY                                                          PLAINTIFF

VS.                              CASE NO:  1:13-CV-00038-JLH

MIDLAND SCHOOL DISTRICT                                                  DEFENDANT

**BRIEF IN SUPPORT OF**
**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff, who the Brief in Support of His Response to Defendant's Motion for Summary Judgment, states:

Defendant argues Plaintiff cannot make out an FMLA claim because: (1) he did not provide timely notice of his need for leave and therefore also did not engage in a protected activity; (2) he failed to timely provide a health care provider's certification in a timely manner; and (3) he cannot establish retaliatory intent because he was fired for not turning the FMLA documentation.  Defendant's arguments fail because McKinney provided adequate notice of his need for FMLA leave, he did provide FMLA paperwork in a timely manner, and he was threatened and fired while on a valid FMLA leave, such that he can make out interference, retaliation, and failure to reinstate claims.  Furthermore, Plaintiff has established a failure to reinstate or interference causing an adverse act, Defendant is obliged to prove Plaintiff would not have been employed, regardless of his use of FMLA leave.

Defendant argues that Plaintiff cannot make out claims for disability discrimination or retaliation under the ADA, Rehab Act, or ACRA because: (1) he did not tell them of his disability; (2) he is not qualified because no reasonable accommodation can insulate a coach from stress, regular work attendance is an essential job function, and he is receiving disability benefits; and

1

(3) no discriminatory or retaliatory intent. However, Plaintiff can establish disability, protected activity, qualification, and intent.

Defendant argues all claims are barred because he did not pursue his rights under the Arkansas Teacher Fair Dismissal Act.  Only the ADA and Rehab Act have an exhaustion of remedies requirement, and Plaintiff did that.  The TFDA is not an administrative prerequisite for any of the claims brought. Using it as such would violate the supremacy clause.  Furthermore, the recommendation and termination violated McKinney's FMLA rights as they should have been suspended while he was on FMLA leave.

<u>STANDARD OF REVIEW</u>

Review of a grant of summary judgment is de novo, and accordingly applies the same standard as that to be used by the District Court.  All facts must be construed in the light most favorable to the Plaintiff, with all favorable inferences drawn.  The Defendant's evidence may be considered to the extent that it "is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151 (2000).  Thus, courts have denied summary judgment even where a statement was uncontradicted, because it came from a witness whose interests were aligned with the moving party. *See Bazan v. Hidalgo County*, 246 F.3d 481 (5th Cir. 2001); *Abraham v. Raso*, 183 F.3d 279, 287 (3rd Cir. 1999) ("Cases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment.";  *Gooden v. Howard County, Md.*, 954 F.2d 960, 971 (4th Cir. 1992) (Phillips, J., dissenting) ("[B]ecause inevitably – – liability being disputed – – the officer's account will be favorable to himself, the credibility of that account is crucial."). Obviously the last clause in Reeves comes because establishing bias is a means of impeachment.  This is particularly important in employment cases where much of the evidence will come from witnesses who are employed by Defendant who pay them substantial amounts of money, who have control of their livelihood and ability to support their family, and

can fire, promote, demote, transfer, layoff, discipline, or harass them. It should also be noted that employment law allows for contradiction of evidence by indirect means. For instance in cases involving pretext, an employee need not prove every reason given for an adverse action false, if he provides proof that some of those reasons are false. *See Dey v. Colt Construction & Development Co.*, 28 F.3d 1446 (7th Cir. 1994); and *Burns v. AAF-McQuay, Inc.*, 96 F.3d 154, 179 (4th Cir. 1996). In discrimination cases, summary judgment should be granted when only one conclusion is clear because such cases often depend on inferences rather than on direct evidence. *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994); *Johnson v. Minn. Hist. Soc'y*, 931 F.2d 1239, 1244 (8th Cir. 1991).

<u>STATEMENT OF FACTS</u>

Rickey McKinney was hired by Midland School District as a coach in 1999. RSUF 1. The school district was a covered employee under the FMLA, and Ricky McKinney was an eligible employee under the FMLA. Ex. A, Stanley, 12-13. School policy on absences was that teachers were to secure their own substitute, and, after they had done so, call into the office to the secretary or principal and let them know who was covering. Ex. A, Stanley, 17.

McKinney had fibromyalgia, that was somewhat controlled by medication. Ex. C, 26, 28-32, 55. Along with that illness, which was at times exacerbated by stress, McKinney had depression and fatigue. Ex. C, 21-22. McKinney was the athletic director and a very successful coach, for both the boys and girls teams, and taught PE and health. Ex. C, 28, 46. McKinney was under Stanley for 3-4 years, and Stanley's abusive treatment of him caused him considerable stress. This included threats against his job, abusive behavior, and not letting him use his lunchbreaks to rest, eat, and take medicine, and stopping him from having an early administrative period where he could come in late when there had been a late road game. McKinney gave Stanley information about fibromyalgia and his medical records. Ex. C, McKinney, 28, 38-42, 51-52, 65-66, 69, 70-72.

3

McKinney was experiencing some level of depression before he started taking off work in January 2012.  Ex. C, McKinney, 105. McKinney did not go to work the week of January 16, 2012, or the next week either.  RSUF 3-4, 6.  Mr. McKinney was severely depressed, unable to get out of bed, to talk coherently, and was crying.  Ex. B, Lynette McKinney, para. 3-4. McKinney's wife, Lynette, called the School District and informed an administrative assistant that he would not be at work on a daily basis. She told the secretary on the first day that she had attempted to obtain a substitute but could not.  The secretary kept attacking her about not obtaining a substitute on a daily basis.  On a daily basis, Ms. McKinney told the secretary that she could not get a substitute, and that her husband was unable to get out of bed, talk, or stop crying and was unable to function.  Ex. B, L. McKinney, para. 3; Ex. A, Stanley, 16-18.

By late the first week, or Monday of the second week, Ms. McKinney had gotten tired of battling the secretary about a substitute, and told her that Ricky McKinney was going to be gone for a while, needed a leave of absence, and that they were considering putting McKinney in a hospital.  Ex. B, L. McKinney, para. 4; Ex. C, McKinney, 58, 64.  The secretary transferred Ms. McKinney to the principal, Donna Clark, and Ms. McKinney repeated all that. However, from the way in which the conversation went and things Clark said, Ms. McKinney could tell that Clark was aware of his condition.  Ex. B, L. McKinney, para. 4. Clark said the Board would have to rule on a leave, and their next meeting was a ways away.  Ms. McKinney asked about a special meeting, and Clark said she did not know anything about that.  Id. Ms. McKinney told Clark that her husband would be gone for a while, would not be back until they said otherwise, and they needed to get a long-term substitute.  Ex. B, L, McKinney, para. 4.  To the extent the letter recommending termination states that McKinney failed to alert the school district of the intended absence – that is false.  Ex. B, L. McKinney, para. 5.

On January 25, 2012, Midland School District received a facsimile from McKinney's attorney, C. Eric Hance, indicating a desire by McKinney to request leave time under the federal Family Medical Leave Act (FMLA). RSUF 7; Ex. A, Stanley, 10-11.

On January 30, 2012, the School District responded to the letter from Hance with its own letter, stating that Mr. McKinney needed to get a health care provider's certification in by, February 6, 2012. RSUF para. 8; Ex. A, Stanley, 12-13. However, there was no indication of what the consequences of not doing so would be. Furthermore, it does not appear it actually got to Mr. McKinney until February 2, or later.  Ex. F, Hance letter of 2/2/12.

On or about January 31, 2012, the School District received a facsimile from Herman Clements, II, M.D., stating that he was in the process of helping Mr. McKinney fill out the FMLA paperwork and that Mr. McKinney should be approved for FMLA. RSUF, para. 9; Ex. A, Stanley, 14.  The letter stated that Clements was McKinney's treating psychiatrist and that McKinney needed FMLA leave.  Def. Ex. C.

On February 6, 2012, Mr. McKinney sent a facsimile to the School District stating that his condition "has not improved." RSUF, para. 10.

On February 10, 2012, the School District sent a certified letter to Mr. McKinney informing him that he was immediately suspended and that the Superintendent would recommend termination of his employment. RSUF, para. 11; Ex. A, Stanley, 15. McKinney received the letter. RSUF, para. 12.

At the time he received this letter, McKinney was in a very fragile state. He had been with the School District for a long time and had been a very successful coach for them. He worked early and late and loved his job.  When they sent him a letter saying he was to be fired, rather than giving him support, it was devastating to him.  His mental state got far worse.  He had been beginning to recover at home, but when he received the letter lost all hope, and in his depressed state felt there was no point in appealing.  He was in no mental state to fight back

against people who were betraying him.  If they had let him take time off, without threatening and betraying him, he would have been able to return to work at the end of February. Ex. B, L. McKinney, para. 6; Ex. C, McKinney, 78-79, 87, 89, 92, 95; Ex. G, Gale Report. He would have needed reasonable accommodation in the form of Stanley not making threats against his job, ceasing abusive behavior, and letting him use his lunch breaks to rest, eat, and take medicine, and if possible, giving him from having an early  administrative period where he could come in late when there had been a late road game, and some additional intermittent FMLA leave for treatment or dealing with stress. The lunch periods and early administrative period had been done in the past, and Stanley's management style could be altered without monetary cost to the district.  Ex. D, R. McKinney Aff; Ex. G, Gale Report.

If defendant had not retaliated in this manner, plaintiff's condition would not have worsened, he would have gone back to work, and he would not have even sought SSD. Furthermore, Plaintiff needs to be able to take FMLA leave as a reasonable accommodation. The only place he would be eligible for FMLA leave would be an employer with whom he had been employed for than one year. Midland is the only employer in America that qualifies.  In addition, Plaintiff needed an early administrative period for times when he had late games and disability related fatigue could be alleviated by a late arrival during such a non-class period.  As a new, probationary teacher, Plaintiff would likely not get such an option or accommodation. Ex. D, R. McKinney Aff.; Ex. G, Gale Report.

On February 13, 2012, McKinney got the FMLA health care provider's certification from Dr. Clements, and provided it to Superintendent Dean Stanley's office. RSUF para. 13; Ex. A, Stanley, 19-20; Ex. C, McKinney, 86.

On or about March 27, 2012, the Board of Directors from the School District officially terminated McKinney's contract.  The reason for the termination was that McKinney did not show up to work, teach, and coach. Ex. A, Stanley, 19.  However, Stanley, the Superintendent,

6

also admits that McKinney would not have been fired if they had received the health care provider's certification by February 6.  Ex. A, Stanley, 21.  The school board accepted Stanley's recommendation of termination, and if Stanley had not made that recommendation, Stanley would not have been fired. Ex. A, Stanley, 22, 41-42. At the time, McKinney was on leave due to a disability, and if that leave had been granted, there would have been no hearing.  Ex. C, McKinney, 82.

McKinney has been coaching on a volunteer basis and wants his job back. Ex. C, McKinney, 94, 96.

Plaintiff timely filed an EEOC charge, and brought suit within 90 days of receiving a right to sue letter. Ex. E (charge and right to sue letter).

<u>ARGUMENT</u>

## I.  FMLA

Under the FMLA, "an eligible employee shall be entitled to a total of twelve workweeks of leave during any twelve-month period . . . because of a serious health condition that makes the employee unable to perform the functions of the position of such employee" 29 U.S.C. § 2612(a)(1)(D). Most FMLA cases involve the following elements in a prima facie case: (1) eligible employee, (2) covered employer, (3) serious health condition, and (4) appropriate notice of that serious health condition to the employer.  From there the remaining elements diverge based on the type of theory pursued.  If a retaliation is pursued the elements are: (5) an adverse action; and (6) motivated by the use of FMLA rights.  Eighth Cir. Mod. Jury Instr. 5.81A.  If an interference claim is pursued, the remaining elements are: (5) an interference with FMLA rights; that (6) causes an injury.  *Throneberry v. McGehee-Desha County Hosp.*, 403 F.3d 972 (8th Cir. 2005).  Furthermore, "the termination of an employee for exercising rights under the FMLA could be viewed as actionable under 29 U.S.C. 2615(a)(1) as a denial of the employee's right under 29 U.S.C. 2614(a) to be restored to an equivalent position upon return from FMLA leave."

*Phillips v. Matthews*, 547 F.3d 905, 914 (8th Cir. 2008). McKinney brings and can make out claims under all theories.

Notably, Defendant does not dispute: (1) eligible employee (Ex. A, Stanley, 12-13); (2) covered employer (Id.); (3) serious health condition (RSUF 13; Def. Ex. Ex. C, G; see also Ex. B, L. McKinney Aff.; Ex. D, R. McKinney Aff.; Ex. G, Gale Report); or (4) that McKinney was terminated while off of work due to his mental health issues (RSUF 2-13, 16; see also St. of Facts above).  Defendant disputes notice, interference, and retaliatory intent.

**A. Appropriate notice was given (relevant to both theories)**

Defendant cites cases on the issue of notice, but takes little note of the explicit language of the regulations, which is unfortunate because they have clear direction. Notice in cases of an unexpected need for leave is controlled by 29 C.F.R. 825.303. The notice must be provided "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. 825.303(a). It may be given by a spokesperson. Id. The employee must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." "When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." Id.

In *Thorson v. Gemini, Inc.*, 205 F.3d 370 (8th Cir. 2000), the Eighth Circuit framed it as "enough information to put the employer on notice that the employee may be in need of FMLA leave." *Id.*, 381 (emphasis added). In that case, the Court upheld summary judgment, in the plaintiff's favor, on the issue of notice based on the following facts:

> Thorson was absent for more than three days with notes from her physician, written on two different occasions within that period of absence, indicating that she was not to work. At that point, Gemini became obligated either to count Thorson's absence as FMLA leave under the "serious health condition" provision or to follow the procedures set out in the statute and the regulations designed to prevent employee abuse of the Act.

*Id.*

In this case, Defendant was already aware of Plaintiff's fibromyalgia, and his wife informed them on a daily basis of his condition for somewhat more than a week, telling them that he was in bed, crying, and unable to communicate or function, and ending by telling them this problem would go on for a while, that he needed leave, and that they were thinking about hospitalizing him. That far exceeds the notice on which summary judgment for a plaintiff was issued in *Thorson.*

**B. Interference claim – Defendant violated the regulations causing his termination.**

The FMLA states that violation of any of its regulations constitutes a forbidden interference with FMLA rights. 29 C.F.R. 825.220. Under this theory, no discriminatory or retaliatory intent is required and Defendant is liable if interfered with FMLA rights which caused an injury. *Throneberry v. McGehee-Desha County Hosp.*, 403 F.3d 972 (8th Cir. 2005); *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998).

When an employer "acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days . . . ." 29 CFR 825.300(b). At the same time, "employers shall provide written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." 29 CFR 825.300(c)(1). That "notice must include . . . any requirements for the employee to furnish certification of a serious health condition . . . and the consequences of failing to do so." 29 CFR 825.300(c)(1)(ii); see also 29 CFR 825.305(b).

Given that Defendant immediately had notice that McKinney might be in need of FMLA leave as of January 16, they should have had a notice of eligibility, rights, and obligations to him by January 23. Any requirement for a health care provider's certification was to be included in that notice. They did not send that notice to him until January 30. They are now claiming that the length of time between his first absence on January 16, and turning in the certification, on February 13, is part of the reason for the termination, establishing interference causing an injury. Additionally, Defendant was required to notify McKinney of the consequences of failing to turn in a health care provider's certification, yet it did not, it just said to do it. See Def. Ex. Q.

The next problem is that a health care provider's certification cannot be required with only six days of time to respond. The regulations require that the employee be given 15 calendar days to provide the certification, or more if circumstances prevent them from doing it

10

within that timeframe. 29 CFR 825.305(b).  Here, Defendant sent the letter to Plaintiff's attorney, not him, on January 30, and gave him six days to respond, not 15 days. Furthermore, Plaintiff got the paperwork in by February 13, which would have been within the appropriate deadline. Not only that, Defendant admitted that if plaintiff had turned the paperwork in by February 6, he would not have been fired.  Accordingly, that establishes that Defendant's interference caused an injury.

The prohibition against interference forbids an employer from "interfering with, restraining, or denying the exercise of rights provided by the Act."  29 CFR 825.220(a)(1). Interference includes "refusing to authorize FMLA leave, [and] discouraging an employee from using such leave."  29 CFR 825.220(b).  Employers also "cannot use the taking of FMLA leave as a negative factor in employment actions . . . nor can FMLA leave be counted under 'no fault' attendance policies."  29 CFR 825.220(c).  Here, Defendant never approved Plaintiff for FMLA leave, violating 220(b).  Furthermore, even when an employee's leave is not designated as FMLA leave, if it is leave by an eligible employee with a serious health condition of which notice has been given to a covered employer, it is still considered FMLA leave.  *Ragsdale v. Wolverine Worldwide, Inc.*, 535 U.S. 81 (2002). Plaintiff's leave was clearly used as a negative factor, as the only reasons given for the termination, are the time off and not getting the certification in by February 6.  Certainly the recommendation for termination constitutes interfering with and restraining his exercise of FMLA rights.  Additionally, when Plaintiff is incapacitated, and cannot do his job, it is a violation of the FMLA to attempt to require him to perform job functions, such as arranging for his own substitute teacher, or attending a hearing to see if he would be fired or not.

Finally, terminating an employee while on FMLA leave constitutes an interference with FMLA rights, unless the employer can prove an affirmative defense that the employee would have been fired regardless of their exercise of FMLA rights.  *Throneberry v. McGehee Desha*

11

*County Hosp.,*403 F.3d 972, 977-79 (8th Cir. 2005).  Here, Defendant terminated Plaintiff while

he was on FMLA leave.  The affirmative defense will be dealt with below.

> **C.    Same decision defense to interference claim fails and has not been raised.**

*Throneberry* adopted the same decision defense for interference, discrimination and

failure to reinstate claims under the FMLA, but did not give much in the way of specifics as to

what must be proved in such a defense.  Here, the Defendant cannot make out the defense

because the reasons given themselves violate the FMLA, in that they are: (1) Plaintiff was fired

due to his leave; (2) Plaintiff would not have been fired had he gotten the FMLA paperwork in by

February 6, and took between January 16 and February 13 to get the paperwork in.  As

described above, both of these reasons constitute interference under the FMLA.

In discussing legitimate, non-discriminatory reasons, under a McDonnell Douglas theory

the Courts have found that "when an employer articulates a reason for discharging the plaintiff

not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even

correct . . . ."  *Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998).  As to the "not

forbidden by law" aspect, that refers to the law at issue in the case.  Id.  A legitimate, non-

discriminatory reason will pass muster, if illegal but not discriminatory; while a reason that is

illegal because it violates the ADA cannot be a legitimate, non-discriminatory reason in an ADA

case. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 612-613 (1993).   In other words, the Courts

refuse to accept an argument or position that is itself discriminatory or retaliatory, to excuse a

discriminatory or retaliatory act.  The cases above detail with making the articulation  of the

legitimate, non-discriminatory reason in a McDonnell Douglas analysis, not the burden of proof

in a same-decision analysis.  Surely though, if an employer cannot meet the lesser burden of

articulation with a discriminatory or retaliatory reason, it cannot meet an actual burden of proof

by a preponderance with such a reason.  Thus, an employer cannot prove a same decision

defense in an FMLA case by offering evidence that the plaintiff was fired in violation of the FMLA's anti-interference provisions.

In addition, even if the Defendant were not offering illegal reasons for the termination, it has not offered any evidence of any other reason for the termination, such as that a reasonable jury would be required to conclude that it had met its burden of proof on an affirmative defense. The Supreme Court has ruled that: "An employer may not, in other words, prevail in a mixed-motives case by offering a legitimate and sufficient reason for its decision if that reason did not motivate it at the time of its decision." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252, 109 S.Ct. 1775, 1791-92 (1989). In analyzing the similar after-acquired evidence defense, the Eighth Circuit has noted that meeting such a burden at summary judgment would be "significant" and that affidavits in such a hypothetical situation were likely to be "self-serving" *Welch v. Liberty Mach. Works, Inc.*, 23 F.3d 1403 (8th Cir. 1994). In *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1046 (7th Cir. 1999), the Seventh Circuit, also in an after-acquired evidence case, held that the defense failed as a matter of law where the defendant failed to produce comparators. *See also Hill v. Lockheed Martin Logistics*, 314 F.3d 657, 674 (4th Cir. 2003) (to prevail, employer must provide evidence so one-sided that a rational fact finder could only conclude that the employer would prevail on the defense) (reversed on other grounds by *an en banc* court, on grounds ultimately discredited by the Supreme Court in *Staub v. Proctor Hosp.*); *Perry v. King*, 878 F.2d 1056 (8th Cir. 1989) (mere articulation of reasons will not suffice to meet burden of proof); *Bell v. Birminham Linen Svc.*, 715 F.2d 1552 (11th Cir. 1983). Thus, Defendant also fails on this defense because it has offered no evidence of a legal reason for the termination that motivated it at the time of the decision.

D.    **Retaliation claim**

Per the arguments and facts above, protected activity and adverse action has been established. That leaves only intent, which Plaintiff can prove via direct evidence, as well as under a *McDonnell Douglas* Structure.

### 1.    Plaintiff has direct evidence of retaliation

Although direct evidence is typically thought of as comments or statements indicating discriminatory intent, this is not complete. Direct evidence can be circumstantial evidence, and is:

> evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action. Thus, "direct" refers to the causal strength of the proof, not whether it is "circumstantial" evidence. A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial.

*Griffith v. City of Des Moines,* 387 F.3d 733, 736 (8th Cir. 2004) (citation omitted). In *Beshears v. Asbill*, 930 F.2d 1348, 1354 (8th Cirl 1991), comments by a person involved in the decision-making process that older employees had problems with adaptation and flexibility constituted direct evidence. Here, as described above, Defendant has stated that McKinney was fired because of: (1) his time off, which was protected leave; and (2) not getting the health care provider's certification in by February 6, and taking from January 16 to February 13 to do so, which goes hand-in-hand with Defendant's own illegal failure to give notice of rights to McKinney and its illegal acceleration of deadlines under the FMLA. That is direct evidence showing a specific link.

### 2.    Plaintiff can make out a McDonnell Douglas case

Under a *McDonnell Douglas* analysis, to establish a prima facie case of retaliation, Plaintiff must show: (1) he exercised rights afforded by the act; (2) he suffered an adverse

employment action; and (3) there was a causal connection between his exercise of rights and the adverse employment action. *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006); *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1002 (8th Cir. 2005). Once Plaintiff establishes his prima facie case, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for their decision to terminate Plaintiff. *Id.* Then, the burden shifts back to Plaintiff to demonstrate that the employer's reason is pretextual. *Id.*  "[T]he threshold of proof necessary to establish a prima facie case is minimal" and that ""[t]he prima facie burden is not so onerous as, nor should it be conflated with, the ultimate issue" of discriminatory action." *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1022-23 (8th Cir. 1998).  The prima facie case will vary and can be proved through evidence of pretext. *Id.*; *Putman v. Unity Health System,* 348 F.3d 732 (8th Cir. 2003).  Furthermore, evidence of admissions of intent as have occurred in this case can be used as to make out a *McDonnell Douglas* case.   *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021-22 (8th Cir. 2011).

     The Eighth circuit allows a plaintiff to establish causation by merely raising "an inference of a retaliatory motive." *Hite*, at 866 (quoting *Kipp v. Mo. Hwy. & Transp. Com'n,* 280 F.3d 893, 897 (8th Cir. 2002).  The timing of the leave and the adverse employment action can be used to establish this link without any additional evidence, but it must be "very close." Id. (quoting *Eliserio v. United Steelworkers of Am.*, 398 F.3d 1071, 1079 (8th Cir. 2005); *Wallace v. Sparks Health Sys.*, 415 F.3d 853, 859 (8th Cir. 2005).  Even if the two events are not close enough in time, Plaintiff can "shorten the gap" by showing that shortly after he took his leave, the defendants took "escalating adverse and retaliatory action against him."*Id.* (quoting *Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 503 (8th Cir. 2005) .  The Eighth Circuit has found that such a two-week interval is "close enough to establish causation in a prima facie case." *Peterson v. Scott County, 406 F.3d 515, 525 (8th Cir. 2005)*; *Hite*, 446 F.3d t 866 (holding two months, with additional evidence, sufficient to establish causal link).  In addition,

evidence of intent can be established through false statements as to the reasons for termination.  *Young,* 152 F.3d at 1023-24.

As to a prima facie case, Plaintiff can make it out based on: (1) direct evidence of intent described above; (2) the timing and threat to Plaintiff's job while he was on leave; and (3) the false statements in the termination recommendation that Plaintiff did not notify them of his health condition.

Thus, Defendant has the burden of establishing a legitimate, non-discriminatory reason. However, as discussed above, the Defendant's offered reasons, being Plaintiff's time off and the illegal requirements as to when he got his certification in, are illegal, and cannot be a legitimate, non-discriminatory reasons.  *See Wilking v. County of Ramsey*, 153 F.3d at 873;  *Hazen Paper Co*, 507 U.S. at 612-613.  Accordingly, the pretext stage is not reached.

Even if it were, the evidence making out the prima facie case above suffices to establish pretext, since it is also strong enough to constitute direct evidence.

## II.    Disability discrimination claims

Plaintiff has brought claims for discharge based on actual and perceived disability, and for failure to accommodate an actual disability.  Defendant argues that Plaintiff loses because: (1) he did not give notice of his disability; (2) he cannot establish qualification for a variety of reasons on his failure to accommodate and discharge claims; and (3) he cannot establish intent as to the discharge claims.  Defendant is wrong.

The ADA prohibits discrimination against a "qualified individual with a disability," 42 U.S.C. § 12112(a), and expressly defines "discrimination" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).  In order for a plaintiff to recover under the

16

ADA for an employer's failure to reasonably accommodate he must show (1) that he 'was or is disabled' as defined by the Act, (2) that [his employer] was aware of this disability, and (3) that he was 'qualified' for the position in question, and (4) that a reasonable accommodation was denied. L. Sutter, The ADA, A Road Now Too Narrow, 22 UALR Law Review 161; *Best v. Heil Oil C*o., 107 F.3d 544, 547-48 (7th Cir. 1997).

**A. Plaintiff did give notice of his disability**

It is not clear exactly what the floor is for giving notice of a disability and need for accommodation. However, the Eighth Circuit upheld a finding that notice of that need had not been given where: (1) there was no evidence the employee's limitations were apparent at work; (2) the employee repeatedly refused to provide a diagnosis; and (3) the employee refused the FMLA leave his employer offered. *Kobus v. College of St. Scholastica, Inc.*, 608 F.3d 1034, 1038 (8th Cir. 2010). In this case, Defendant was already aware of Plaintiff's fibromyalgia, and his wife informed them on a daily basis of his condition for somewhat more than a week, telling them that he was in bed, crying, and unable to communicate or function, and ending by telling them this problem would go on for a while, that he needed leave, and that they were thinking about hospitalizing him. On January 25, Eric Hance specifically requested FMLA leave for Plaintiff. Def. Ex. B. The letter stated that Clements was McKinney's treating psychiatrist and that McKinney needed FMLA leave. Def. Ex. C. Accordingly, here, Plaintiff gave the kind of information that Kobus did not, and that the Eighth Circuit indicated would have been desirable. There is at least a fact issue as to notice.

**B. Qualification and Failure to Accommodate – reasonable accommodation was requested and would have enabled Plaintiff to do his job, and Defendant's illegal conduct caused the condition to worsen such that he became so disabled as to qualify for SSD.**

Defendant argues that Plaintiff cannot establish that he was qualified because: (1) no accommodation could insulate him from stress; (2) regular attendance is a job requirement; and

(3) he went on SSD.  The arguments fail because the accommodations Plaintiff needed would have enabled him to do his job, and Defendant's illegal conduct caused him to go on SSD. Plaintiff did give notice of his disability and need for accommodation in the form of leave, as described in Section II.A. above.

In order to be a qualified individual, Plaintiff had to establish that he was able to do his essential job functions, with or without reasonable accommodation.   The regulations define reasonable accommodation as follows:

> "(o) Reasonable accommodation.
> (1) The term reasonable accommodation means:
> . . .
> (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position; or
> . . .
> (2) Reasonable accommodation may include but is not limited to:
> . . .
> (ii) Job restructuring; *part-time or modified work schedules*; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities.
> (3) To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

42 C.F.R. 1630.2(o) (emphasis added).

Once the plaintiff requests accommodation, the parties must engage in an "interactive process" to determine what precise accommodations are necessary. See 29 C.F.R. § 1630.2(o)(3) & § 1630 App., § 1630.9; *accord Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 951 (8th Cir. 1999). Failure of an employer to engage in an interactive process is prima facie evidence that the employer may be acting in bad faith. Id.,at 952. Once the plaintiff makes a

facial showing that reasonable accommodation is possible, the burden of production shifts to the employer to show that it is unable to accommodate the employee. *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir. 1995); *Wood v. Omaha Sch. Dist.*, 985 F.2d 437, 439 (8th Cir. 1993); *Arneson v. Heckler*, 879 F.2d 393, 396 (8th Cir. 1989).  The failure of an employer to engage in an interactive process to determine whether reasonable accommodations are possible is prima facie evidence that the employer may be acting in bad faith. Fjellestad, 188 F.3d at 951-2.  In concluding that an employer may be liable under certain circumstances for failing to engage in the interactive process to determine reasonable accommodation, the *Fjellestad* court cited with approval a Third Circuit case, *Taylor v. Phoenixville School District*, 174 F.3d 142 (3rd Cir. 1999), and employed the *Taylor* court's four-part analysis. See *Id.* at 952. In *Taylor*, the Third Circuit held that an employer's obligation to participate in the interactive process is triggered once the employer knows of an employee's disability and the employee or the employee's representative has requested accommodation. *Taylor*, 174 F.3d at 158-59. To hold an employer liable, an ADA plaintiff must demonstrate the following factors to show that the employer failed to participate in the interactive process:

> "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith."

*Fjellestad*, 188 F.3d at 952 (quoting *Taylor*, 174 F.3d at 165 (citations omitted).

FMLA leave is a reasonable accommodation.  Leave under the FMLA can also be a reasonable accommodation under the ADA, or under state statutes.  29 CFR 1630.2(o)(2); 29 C.F.R. 825.702(a). Section 702 states:

> Nothing in FMLA modifies or affects any Federal or State law prohibiting discrimination on the basis of . . . disability. . . .  An employer must . . . provide leave under whichever statutory provision provides the greater rights to employees. When an employer violates both FMLA and a discrimination law, an employee may be able to recover under either or both of the statutes.

"If an employee is a qualified individual with a disability within the meaning of the ADA, the employer must make reasonable accommodations . . . in accordance with the ADA. At the same time, the employer must afford an employee his or her FMLA rights."  29 C.F.R. 825.702(b). Here is an example provided by the FMLA regulations:

> A qualified individual with a disability who is also an "eligible employee" entitled to FMLA leave requests 10 weeks of medical leave as a reasonable accommodation, which the employer grants because it is not an undue hardship. The employer advises the employee that the 10 weeks of leave is also being designated as FMLA leave and will count towards the employee's FMLA leave entitlement.  This designation does not prevent the parties from also treating the leave as a reasonable accommodation . . . .

29 C.F.R. 825.702(c)(2).  The EEOC is in agreement with this:

> ADA Compliance When the FMLA Also Applies
>
> Q:    If an individual requests time off for medical treatment, should the employer treat this as a request for FMLA leave and ADA reasonable accommodation?
> A:    If an employee requests time off for a reason related or possibly related to a disability (e.g., "I need six weeks off to get treatment for a back problem"), the employer should consider this a request for ADA reasonable accommodation as well as FMLA leave.

United States Equal Employment Opportunity Commission, *The Family Medical Leave Act, the Americans with Disabilities Act, and Title VII Civil Rights Act of 1964, Fact Sheet*, http://www.eeoc.gov/policy/docs/fmlaada.html.

Defendant argues that regular attendance is an essential job function, and that Plaintiff therefore could not be reasonably accommodated. This ignores the direction from the EEOC above, the leave and modified work schedules are reasonable accommodations. Furthermore, an employer cannot make something an essential job function, if it is illegal to do so.  As established above, FMLA leave was legally mandated in this case.  Accordingly, Defendant could not legally require Plaintiff to have regular job attendance while on FMLA leave. This means in turn, that FMLA leave was a reasonable accommodation.  Plaintiff and his wife believe that if he had been given accommodation, rather than threats, that he could have returned to work and done his job.  He would have needed some reasonable accommodations once there,

which would have been for Stanley not to engage in abusive tactics toward Plaintiff, an early administrative period (had been done in the past), and actually getting to use his lunch break (had been done in the past).

As to the issue of being on Social Security Disability, the Supreme Court has stated there is no presumption against a person on SSD being able to establish that they are qualified "because there are too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 802-03, 119 S.Ct. 1597 (1999). The ADA indicates that anyone who can do their essential job functions with reasonable accommodations is qualified, but the SSA does not take reasonable accommodation into account, and an applicant for SSD need not discuss reasonable accommodation when applying for disability benefits. *Id.*, 803. Furthermore, the SSA, in making its decisions, does not consider "an individual's ability to perform a particular job," where as ADA cases when considering qualification and reasonable accommodation, deal in particular with the plaintiff-employee's job with the defendant-employer *Id.,* 804. Furthermore, employees can receive SSD benefits while still working part time, or while they are on a 9 month trial period. *Id.*, 805. However, the plaintiff bears the burden of proving qualification, and therefore, will have to provide an explanation for their claim to be able to work, while also having applied for or received SSD benefits. *Id.*, 806.

Here, there are several reasons there is no inconsistency between alleging qualification and receiving SSD benefits. First, at the time accommodation was requested in the form of leave, Plaintiff had yet to be betrayed completely by the District. His condition got considerably worse after being told that he was recommended for termination, and this impaired his recovery. Ex. B, L. McKinney Aff. Furthermore, Plaintiff needs to be able to take FMLA leave as a reasonable accommodation. The only place he would be eligible for FMLA leave would be an employer with whom he had been employed for than one year. Midland is the only employer in

America that qualifies.  In addition, Plaintiff needed an early administrative period for times when he had late games and disability related fatigue could be alleviated by a late arrival during such a non-class period.  As a new, probationary teacher, Plaintiff would likely not get such an option or accommodation. Ex. D, R. McKinney Aff.

### C.  Plaintiff can establish discriminatory and retaliatory intent

To make out a discriminatory discharge claim based on disability, Plaintiff needs to establish: (1) disability; (2) qualification; (3) adverse action; (4) notice of the disability; and (5) intent.  To make out an ADA retaliation claim, Plaintiff must establish: (1) protected activity, (2) adverse action, and (3) retaliatory intent, as described in Section II.D. above (discussing FMLA retaliation claim).  Intent can be established through direct evidence, or through the *McDonnell Douglas* proof structure.  Direct evidence refers to the strength of the evidence, and can be circumstantial evidence.  If Plaintiff proceeds on a *McDonnell Douglas* structure, the prima facie case is a light burden, and can be established through comparators, evidence of pretext, direct evidence, replacement by a person not in the protected class, or in the case of a retaliation claim, timing.  Defendant must then offer a legitimate, non-discriminatory reason, and Plaintiff must prove pretext.  Qualification has been established above.

Defendant has not moved on the basis of disability, however, Plaintiff will discuss it briefly.  For a regarded as claim, McKinney need only establish they knew he had an impairment. *Brown v. City of Jacksonville,*711 F.3d 883 (8th Cir. 2013).  Defendant clearly knew this.  As to actual disability, the ADA amendments substantially lowered the standard for what a disability is from prior case law.  The term is construed broadly and is not demanding.  It need not prevent or significantly restrict the individual from performing the major life activity in question. Medical evidence is not required.  Mitigating measures are not considered.  If the impairment is episodic or in remission, it is considered substantially limiting, even if it is only so when the condition is active.  Temporary conditions may be disabilities. See 29 CFR

1630.2(j)(1) for all of those propositions.  Here, at his worst, Plaintiff was unable to get out of bed, was crying, could not function, and could not communicate.  It is clearly a long term condition, and the grant of SSD benefits actually evidences disability. McKinney can establish a disability.

As to protected activity, as noted above, in Section II.B, FMLA leave is a reasonable accommodation.  Plaintiff gave a qualifying request for FMLA leave, as noted above, in Section I.A.,.  The information given was also sufficient to give notice of a disability and need for reasonable accommodation, as noted above in Section II.A. A good-faith, reasonable request for accommodation is a protected act, even if later analysis shows a person not to have a disability.  *Heisler v. Metropolitan Council*, 339 .3d 622 (8th Cir. 2003).  Here, Plaintiff clearly had such a belief, so protected activity is established.

This leaves issues of intent.  As described above, Plaintiff clearly has direct evidence of retaliatory and discriminatory intent since Defendant has admitted to firing Plaintiff due to leave for his disability, and to multiple violations of the FMLA regarding that same leave.  Plaintiff was recommended for termination and fired shortly after revealing the extent of his disability and requesting accommodation for that disability.  Defendant has falsely claimed that Plaintiff failed to call in or describe the nature or duration of his illness between January 16 and January 25.  Defendant cannot offer a legitimate, non-discriminatory reason because the reasons it offers for the termination are illegal in the context of leave under the FMLA and ADA.  Finally, as noted in *Fjellestad*, failure to engage in the good faith interactive process is prima facie evidence of bad faith.  Here, Defendant fired Plaintiff illegally and out of hand, without even waiting for the statutorily mandated time to get the health care provider's certification, and therefore short circuiting the good faith interactive process.

**III.    Teacher Fair Dismissal Act, as a state law, cannot bar federal claims**

The FMLA does not contain an exhaustion of remedies requirement, and gives an employee the choice of filing a complaint with the secretary of labor or filing suit in court.  29 U.S.C. 2601, et seq.; 29 C.F.R. 825.400; *Danfelt v. Board of County Comm'rs,* 998 F.Supp. 606, 609 (D.Md. 1998); *Sutton v. Derosia*, 2012 U.S.Dist. LEXIS 147434, *13 (E.D. Cal. 2012).  The ADA has an exhaustion of remedies requirement requiring filing an EEOC charge with the EEOC within 180 days of the adverse act, and filing suit within 90 days of issuance of a right to sue letter, and does not require an appearing before a board or appealing their decision ot state court.  42 U.S.C. 12117; 42 U.S.C. 2000e-5. The supremacy clause bars state law from interfering with the administration of the FMLA. *Byrd v. Cal. Superior Court*, 2009 U.S. Dist. LEXIS 57970, *28 (N.D. Cal. 2009); *Ramos v. Hoyle,* 2009 U.S. Dist. LEXIS 61062, *31 (S.D. Fla. 2009).   Furthermore, since Plaintiff should have been permitted to take FMLA leave, it was a violation of the FMLA regulations to require him to appear at a work hearing.  29 C.F.R. 825.220.  The recommendation and hearing should have been suspended while he was on FMLA leave.

Respectfully submitted,

SUTTER & GILLHAM, P.L.L.C.
Attorneys at Law
P.O. Box 2012
Benton, AR 72018
501-315-1910  Office
501-315-1916  Facsimile
Attorney for the Plaintiff


By:    */s/ Luther Oneal Sutter*
       Luther Oneal Sutter, AR Bar No. 95031
       *luthersutter.law@gmail.com*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of March, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to counsel for the Defendant:

Anneliese Bacon

*mab@mcrmt.com*
David R. Matthews
*drm@mcrmt.com*

*/s/ Luther Oneal Sutter*
Luther Oneal Sutter