# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

RICKEY MCKINNEY                                               PLAINTIFF

v.                              No. 1:13CV00038 JLH

MIDLAND SCHOOL DISTRICT                                       DEFENDANT

## OPINION AND ORDER

Rickey McKinney brings this action against Midland School district, alleging claims of discrimination, failure to accommodate, and retaliation under Titles I and II of the Americans with Disabilities Act of 1990,[1] Section 504 of the Rehabilitation Act of 1974,[2] and the Arkansas Civil Rights Act.[3]  McKinney alleges that Midland School District failed to accommodate his mental impairment, discriminated against him on the basis of his impairment, and retaliated against him for requesting leave.  The school district has moved for summary judgment.  McKinney's response to the school district's motion states that he has also alleged claims for interference, retaliation, and failure to reinstate under the Family and Medical Leave Act.[4]  Document #20 at 1.  Contrary to his response, McKinney's complaint does not expressly allege that he is asserting any FMLA claims.  As explained *infra*, however, the complaint can and will be construed to allege an FMLA discrimination claim.

As noted, Midland School District has moved for summary judgment on all of McKinney's claims.  For reasons that will be explained, the motion is granted.

---

[1] 42 U.S.C. §§ 12101 et seq.

[2] 29 U.S.C. §§ 794 et seq.

[3] Ark. Code Ann. §§ 16-123-101 et seq.

[4] 28 U.S.C. §§ 2601 et seq.

# I.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact is presented only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Spencer v. Jackson Cnty. Mo.*, 738 F.3d 907, 911 (8th Cir. 2013). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

# II.

McKinney was a teacher and a basketball coach for Midland School District from 1999 until 2012. On Monday, January 16, 2012, McKinney failed to report to work. His wife, Lynette, called the school office and explained to a secretary that her husband was bed-bound, crying, and not talking. McKinney was not present to teach or to coach a basketball game that evening for which

he was responsible.  Document #12 at 37.  His condition persisted, and each subsequent day that week Lynette called the office to inform the school that he would be absent.  Document #21-2. McKinney continued to be absent from his teaching and coaching duties.  Document #12 at 38.

Either on Friday of that week or the following Monday, Lynette informed the secretary that her husband would need a leave of absence, that they were considering checking him into a hospital, and that it would be necessary to arrange for a long-term substitute.  Document #21-2.  The secretary referred Lynette to the principal, Donna Clark.  Clark informed Lynette that she would have to take up the matter of leave with the school board but that no school board meeting was scheduled for quite some time.  Document #21-2.

On the following Wednesday, January 25, 2012, McKinney's attorney, C. Eric Hance, sent a letter by facsimile to Midland School District requesting leave under the Family and Medical Leave Act.  Document #12 at 29.  Hance stated, "[I]f there are any forms or notices required by you to complete the process[,] send those to me and I will insure they are completed."  *Id*.  On January 30, 2012, Superintendent Dean Stanley responded to Hance with a letter enclosing "an FMLA package" taken from the district's handbook.  Document #21-1 at 3.  The district's policy required that a medical certification from a health care provider be provided at least fifteen days before the leave is to begin.  Document #12 at 71.  The policy also provided that when the approximate timing of the need for leave is not foreseeable, notice should be given as soon as practicable.  *Id*.  The policy further provided that when a healthcare provider certification is provided, the district may obtain a second opinion.  *Id*. at 72.  Stanley's letter to Hance referenced those provisions and requested that he "have the referenced documentation submitted to my office by Monday, February 6, 2012."  *Id*. at 31.

On January 31, 2014, McKinney's psychiatrist, Dr. Herman Clements, II, sent a letter by facsimile to Stanley stating that he was treating McKinney, that it was his professional opinion that he should be approved for FMLA leave, and that he was filling out the proper paperwork to help with that process.  Document #12 at 33.  On February 6, 2012, McKinney sent a note by facsimile to the school district stating that his condition had not improved and requesting that any other documentation required for his FMLA leave should be sent to an address in Pleasant Plains, Arkansas.  *Id*. at 35.

On February 10, 2012, Stanley sent a certified letter to McKinney notifying him that he was immediately suspended and was not to be on any school property without permission during his suspension.  *Id*. at 37.  The letter delineated several of his absences, stated that he had failed to fulfill his contractual obligations, notified him that he intended to recommend that the school board terminate his contract, and notified him of his right to a hearing.  *Id*. at 37-38.

On February 13, 2012, Hance faxed to Stanley an FMLA healthcare provider certification that Clements had completed.  *Id*. at 44-48.  The certification estimated that McKinney's "period of incapacity" would be from January 16, 2012, to July 1, 2012.  *Id.* at 47.

Stanley sent McKinney a certified letter dated March 27, 2012, notifying him that the school board had terminated his contract effective March 26, 2012.

Shortly thereafter, McKinney applied for Social Security Disability Insurance benefits, and he promptly began receiving benefits.  *Id*. at 55.

On April 12, 2012, McKinney filed a complaint with the Equal Employment Opportunity Commission, alleging discrimination on the basis of disability and retaliation.  McKinney received

a right-to-sue letter dated January 10, 2013, and on May 10, 2013, McKinney commenced this action.

## III.

### A.     ADA and Rehabilitation Act Disability Discrimination Claims

McKinney's complaint alleges that he requested leave from work as a reasonable accommodation, and that Midland School District discriminated against him and failed to accommodate him by providing him with leave. Disability-discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting framework, *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005), and failure-to-accommodate claims are analyzed under a modified burden-shifting framework. *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1074 (8th Cir. 2006).

> The ADA makes it unlawful for a covered employer to discriminate against any "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The Rehabilitation Act likewise forbids discrimination against an "otherwise qualified individual with a disability . . . , solely by reason of her or his disability." 29 U.S.C. § 794. "Discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To establish discrimination under the ADA, an employee must show that she (1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of her disability. *Huber v. Wal–Mart Stores, Inc.*, 486 F.3d 480, 482 (8th Cir. 2007). To be a qualified individual under the ADA, an employee must "(1) possess the requisite skill, education, experience, and training for [her] position, and (2) be able to perform the essential job functions, with or without reasonable accommodation." *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003) (internal quotation omitted); *see also* 42 U.S.C. § 12111(8).

*Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013) (alteration in *Hill*). Claims under the Rehabilitation Act are generally analyzed under the same framework as those under the ADA. *Muldrow v. Dep't of Defense*, 544 F. Supp. 2d 768, 776 (E.D. Ark. 2008).

Midland School District argues that McKinney cannot show that he is able to perform the essential functions of his job because regular attendance at work is an essential function.

> While "regular attendance at work is an essential function of employment," permitting an employee to take "a medical leave of absence might, in some circumstances, be a reasonable accommodation." *Brannon* [*v. Luco Mop Co.*]*,* 521 F.3d [843,] 849 [(8th Cir. 2008)] (citing *Browning v. Liberty Mut. Ins. Co.,* 178 F.3d 1043, 1049 n.3 (8th Cir. 1999)); *see also* 29 C.F.R. § 1630.2(o)(2)(ii) (reasonable accommodation may include "part-time or modified work schedules"). A number of courts have "concluded that a leave of absence may be a reasonable accommodation where it is finite and will be reasonably likely to enable the employee to return to work." *Graves v. Finch Pruyn & Co.,* 457 F.3d 181, 186 n. 6 (2d Cir. 2006) (collecting cases); *see also Peyton v. Fred's Stores of Ark., Inc.,* 561 F.3d 900, 903 (8th Cir. 2009) ("[A] request for an indefinite leave of absence . . . is not a reasonable accommodation under the ADA.").

*Hill v. Walker*, 918 F. Supp. 2d 819, 829-30 (E.D. Ark. 2013). For purposes of McKinney's disability-discrimination claims, the pertinent question is whether a leave of absence for a definite term likely would have enabled McKinney to achieve regular attendance at work. McKinney argues that he would have been able to return to work by the end of February, but that the superintendent's February 10, 2012, recommendation that he be terminated was devastating and further weakened his already fragile mental condition, prolonging his need for medical leave.

McKinney's claim that he would have been able to return to work by the end of February is belied by the healthcare certification by Dr. Clements, McKinney's treating psychiatrist, dated February 12, 2012. Dr. Clements estimated that McKinney's "period of incapacity" would be from January 16, 2012, to July 1, 2012. Document #12 at 47. That estimate reflected Dr. Clements' view of McKinney's condition prior to McKinney's learning that he would be recommended for termination, as Dr. Clements indicated that the last time he had treated McKinney for his condition was January 30, 2012. *Id.* at 46. Furthermore, Dr. Clements estimated that McKinney would

continue to have full-day episodes two or three times per week for eleven months.  Document #12 at 48.

"[I]t is axiomatic that in order for [a plaintiff] to show that she could perform the essential functions of her job, she must show that she is at least able to show up for work."  *Browning*, 178 F.3d at 1048.  An employer is not required by the ADA to provide an unlimited absentee policy.  *Buckles v. First Data Res., Inc.*, 176 F.3d 1098, 1101 (8th Cir. 1999).  Furthermore, a plaintiff must demonstrate that the requested accommodation of additional leave would have enabled him to achieve consistent attendance at work.  *Id*.

This case is similar to *Brannon*, 521 F.3d 843.  In that case the plaintiff, Jeanette Brannon, suffered from Type II diabetes and neuropathy.  On March 8, 2005, Brannon sustained an injury by a splinter to her toe, which became infected and required surgery.  On March 16, 2005, Brannon's boyfriend hand-delivered to her employer, Luco Mop Company, a "return to work" form that indicated that she expected to return to work on April 18, 2005.  Brannon's boyfriend subsequently delivered two other "return to work" forms on April 12 and April 26, 2005, which indicated anticipated return dates of April 26 and May 23, respectively.  *Id.* at 845.  On April 26, 2005, Luco Mop Company terminated Brannon's employment, citing her extended absences and deficient work quality.  Brannon brought suit, alleging disability-discrimination and failure-to-accommodate claims.  Brannon maintained that she could have performed the essential functions of her job with reasonable accommodations including an extended leave of absence and an ability to sit for short periods of time while on the job.  *See id.* at 846.  Luco Mop Company moved for summary judgment, arguing, in pertinent part, that "Brannon was not a 'qualified individual' under the ADA because she could not show that she was able to perform the essential functions of her job, that is, regular and reliable

attendance, with or without a reasonable accommodation." *Id.* at 846.  The district court granted summary judgment to Luco Mop Company, finding that her job had to be done from a standing position and that Brannon had missed 40 of the 77 work days preceding her termination.  *Id.*  The court held that she had not shown that any reasonable accommodation would have allowed her to perform the essential function of attendance at work.  *Id.*  On appeal, the Eighth Circuit affirmed, holding that Brannon failed to make a prima facie showing that she was a qualified individual under the ADA.  *Id.* at 848.  Specifically, the court held that Brannon was unable to show that her request for medical leave was a reasonable accommodation that would have permitted her to perform the essential function of regular work attendance.  *Id.*

Much like the employee in *Brannon*, McKinney was absent from work for four weeks before the superintendent decided to recommend him for termination.  However, unlike *Brannon*, McKinney gave the district no indication during that time that a finite leave of absence would enable him to achieve regular attendance at work.  After the superintendent decided to recommend his termination, McKinney returned the healthcare provider certification, which included Dr. Clements' projected end of McKinney's "period of incapacity" of July 1, 2012.  Providing this certification is analogous to the delivery of the subsequent "return to work" forms in *Brannon*, where the court found that extending the employee's leave by just under a month after she had already missed one and one-half months was not a reasonable accommodation that would have permitted her to perform the essential function of regular work attendance.  Here, McKinney is unable to show that the district's approving his FMLA leave for nearly six months after he had already missed nearly a month of work would have been a reasonable accommodation that would have permitted him thereafter to perform the essential function of regular work attendance.  Indeed, Dr. Clements' report

of February 13, 2012, estimated that McKinney would have flare-ups two to three times per week for eleven months and that these episodes would last all day.  Document #12 at 48.  Thus, despite Dr. Clements' estimate that McKinney could return to work on July 1, 2012, his report indicated that even after July 1 McKinney would have been unable to attend work regularly and reliably.

Because McKinney cannot show that he was able to perform the essential functions of his job, he cannot show that he is a qualified individual under the ADA.  This finding undercuts the prima facie cases of both McKinney's disability-discrimination and failure-to-accommodate claims. *Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 906 n.4 (8th Cir. 2010) (The ADA "requires an employee to show that he is 'a qualified individual with a disability' in order to state a valid claim for failure to accommodate.").[5]  Consequently, these claims fail.

## B.    ADA and Rehabilitation Act Retaliation Claims

Retaliation claims are analyzed under the *McDonnell Douglas* framework.  *Lors v. Dean*, 746 F.3d 857, 867 (8th Cir. 2014).  To establish a prima facie case of unlawful retaliation under the ADA, a plaintiff must show (1) he engaged in a statutorily protected activity, (2) the employer took an adverse action against him, and (3) there was a causal connection between the adverse action and the protected activity.  *Withers v. Johnson*, 763 F.3d 998, 1004-05 (8th Cir. 1998).[6]  Assuming that McKinney's request for leave was protected activity under the ADA, he has met the first two

---

[5] Midland School District raises several other arguments against McKinney's disability-discrimination and failure-to-accommodate claims, but because McKinney is not a "qualified individual" under the ADA, the Court does not reach those issues.

[6] "[A] plaintiff in an ADA retaliation case need not establish that he is a 'qualified individual with a disability.'"  *Krouse v. Am. Sterilzier Co.,* 126 F.3d 494, 502 (3d Cir. 1997) (emphasis omitted); *Stebbins v. Legal Aid of Arkansas*, No. CIV. 11-3057, 2012 WL 5411350, at *2 (W.D. Ark. Sept. 10, 2012) report and recommendation adopted in part, No. 3:11-CV-03057, 2012 WL 5411148 (W.D. Ark. Nov. 6, 2012).

elements of his prima facie case.  The issue is whether he can establish that there was a causal connection between the termination and his request for leave.

It is undisputed that on January 16, 17, 18, 19, and 20 of 2012, McKinney failed to report to work, failed to alert the school in advance of his intended absence, and did not call a substitute for his classes.  He also failed to notify the school that he would not be coaching basketball games on three of those nights.  Document #12 at 37-38.  McKinney did not specifically request FMLA leave until January 25, 2012, when his lawyer sent a letter to the school district.  The superintendent responded on January 30, 2012, and requested medical certification by Monday, February 6, 2012, so that the district could, if it chose, obtain a second opinion regarding the severity of McKinney's condition.  Document #12 at 31.  That request complied with 29 C.F.R. § 825.305(b), which provides that the employer may request that an employee furnish certification by a healthcare provider at the time the employee gives notice of the need for leave or within five business days thereafter or, in the case of unforeseen leave, within five business days after leave commences.  It is undisputed that McKinney did not provide a healthcare provider's certification by February 6.[7] Indeed, McKinney did not provide the certification until after the superintendent gave notice of intent to recommend that the school board terminate McKinney's contract.  In short, the school district had a legitimate reason for terminating McKinney, and McKinney cannot show a causal connection between his termination and his request for leave.  McKinney notes the temporal proximity of his leave to his termination, "but timing alone is not sufficient to create a genuine issue of fact, particularly given that [the school district's] proffered reason for the termination arose in the same window of time."  *Withers*, 763 F.3d at 1005.

_____

[7] Dr. Clements' letter dated January 31, 2012, does not meet the requirements of a healthcare provider's certification.  *See* 29 C.F.R. § 825.306.

C.    **FMLA Retaliation Claim**

The Eighth Circuit has

recognized three categories of FMLA claims arising under 29 U.S.C. § 2615(a)(1)-
(2): (I) entitlement claims, in which an employee alleges a denial of a benefit to
which he was entitled under the statute; (ii) discrimination claims, in which an
employee alleges that the employer discriminated against him in the terms and
conditions of employment because the employee exercised rights to which he was
entitled under the FMLA; and (iii) retaliation claims, in which an employee alleges
that the employer took adverse action against him for opposing a practice made
unlawful under the FMLA.

*Johnson v. Wheeling Mach. Products*, 779 F.3d 514, 517-18 (8th Cir. 2015) (citing *Pulczinski v.*

*Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005-06 (8th Cir. 2012).  McKinney's complaint does

not mention the FMLA, but it can be construed to allege an FMLA discrimination claim.[8]

The type of claim that the Eighth Circuit now identifies as a "discrimination claim" has at

times been described as a "retaliation claim."  *Pulczinski*, 691 F.3d at 1006 (citing *Sisk v. Picture*

*People, Inc.*, 669 F.3d 896, 900 (8th Cir. 2012) and *Stallings v. Hussman Corp.*, 447 F.3d 1041,

1051 (8th Cir. 2006)).

To establish a *prima facie* case of FMLA discrimination, an employee must show:
(1) that he engaged in activity protected under the act, (2) that he suffered a

---

[8] Although McKinney's complaint never references the FMLA, a complaint need not specify
a legal theory in the complaint in order to state a claim under the Federal Rules of Civil Procedure.
*See* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1219 (3d ed.
2004).  A complaint must contain "a short and plain statement of the claim showing that the pleader
is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  McKinney's complaint alleges that he requested leave
and that the school district retaliated against him for requesting leave.  Those allegations are
sufficient to state the grounds upon which relief could be granted for an FMLA discrimination claim,
as the school district essentially has conceded because it has interpreted McKinney's complaint to
allege a claim of "FMLA retaliation."  *See* Documents #11, #12 at 8-22.  McKinney's complaint
does not, however, allege the grounds upon which relief could be granted for an FMLA interference
claim or an FMLA retaliation claim.  If he intended to advance one of those claims, he has failed to
plead those claims with enough detail to provide the school district and the Court notice that he
intended to proceed on those claims.  *Cf. Knight v. Continental Tire North America, Inc.*, No. N-CV-
02915-JLK, 2011 WL 1155090, at *2 n.2 (D. Colo. March 29, 2011).

materially adverse employment action, and (3) that a causal connection existed between the employee's action and the adverse employment action.

*Pulczinski*, 691 F.3d at 1007.  "An employee making this type of claim must prove that the employer was motivated by the employee's exercise of rights under the FMLA."  *Id*. at 1006.  Such FMLA discrimination claims are evaluated under the *McDonnell Douglas* burden-shifting framework.  *Id*. at 1007.

As explained above, the school district presented a legitimate, nondiscriminatory reason for the decision to terminate McKinney's employment, and McKinney has not shown that the explanation was pretextual.  *Cf. id*.

**D.    Arkansas Civil Rights Act Claims**

Disability claims presented under the Arkansas Civil Rights Act are analyzed using the same principles as claims under the Americans with Disabilities Act.  *Jackson v. City of Hot Springs*, 751 F.3d 855, 863 (8th Cir. 2014).  Therefore, McKinney's state law disability claims fail for the same reason that his ADA claims fail.  The Arkansas Civil Rights Act does not prohibit discrimination on the basis of FMLA leave.  *Id*. at 865.  Consequently, all of McKinney's claims under the Arkansas Civil Rights Act fail.

<strong>CONCLUSION</strong>

For the reasons stated, Midland School District's motion for summary judgment is GRANTED.  Document #11.  Judgment will be entered in favor of Midland School District on the claims of Rickey McKinney.

IT IS SO ORDERED this 21st day of April, 2015.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE